**Opinion filed May 9, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00342-CR

_____

## EX PARTE OLUSEGUN MICHAEL AFOLABI

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR54436-A**

## M E M O R A N D U M   O P I N I O N

Appellant, Olusegun Michael Afolabi, appeals from the trial court's order that denied him relief on his application for a writ of habeas corpus that he filed pursuant to Article 11.072 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West Supp. 2023). In two issues, Appellant contends that the trial court abused its discretion when it (1) did not find that the admitted mistakes by Appellant's trial counsel amounted to errors that influenced Appellant's decision to plead guilty, and (2) denied Appellant's request for habeas relief without analyzing

his ineffective-assistance-of-counsel claim in the "involuntary plea" context. We affirm.

## I. *Factual Background*

Pursuant to a negotiated plea agreement, Appellant entered a plea of guilty to the offense of sexual assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(1), (f) (West Supp. 2023). According to the terms of the plea agreement, in exchange for Appellant's plea of guilty, Appellant would be placed on deferred adjudication community supervision for two years and assessed a fine of $2,500.

Prior to the entry of his plea, Appellant waived his right to a record of his plea hearing. At the plea hearing, the trial court accepted Appellant's plea of guilty, approved the plea agreement, and signed a judgment that placed Appellant on deferred adjudication community supervision consistent with the terms of the plea agreement. *See* CRIM. PROC. art. 42A.101 (West 2018).

Thereafter, Appellant filed a pro se motion for new trial in which he alleged that, prior to the entry of his plea, his trial counsel, Luis Chavez, did not inform him that, as a consequence of his plea of guilty, he would be required to register as a sex offender for the duration of his life. An amended motion for new trial and motion in arrest of judgment were filed, by appellate counsel on Appellant's behalf, in which Appellant similarly asserted that Chavez did not advise him about the consequences of his plea of guilty, namely, that by pleading guilty to the charged offense Appellant would be required to register as a sex offender for life. Appellant further complained that Chavez did not explain to him the immigration consequences of his plea; although Appellant is a United States citizen, he claimed that he "hails from Nigeria" and that the terms of his plea agreement potentially compromised his ability to ever return to or visit that country.

2

The affidavits of Appellant and Chavez were attached to the amended motion for new trial. In his affidavit, Appellant stated that he was not properly informed by Chavez of the consequences of his guilty plea, specifically of the lifetime sex offender registration requirement and its significance to Appellant's ability to travel to Nigeria. Chavez, in his affidavit, stated that he did not discuss the immigration consequences of the guilty plea with Appellant, and it was not necessary to do so, because Appellant is a United States citizen. Chavez further stated it was only after Appellant entered his guilty plea that he realized that, as a consequence of the statutory lifetime sex offender registration requirement, Appellant may not be able to return or be admitted to Nigeria. Chavez also stated that Appellant "would not have accepted the plea offer if there was no chance of [him] being able to return to Nigeria." However, nowhere in his affidavit did Chavez state that he failed to advise Appellant of the lifetime sex offender registration requirement.

We unfortunately do not have the benefit of a record of Appellant's plea hearing. However, the plea documents and the trial court's judgment are included in the record before us. The written plea agreement executed by Appellant does not mention that, as a consequence of his plea of guilty, he would be required to register as a sex offender for the remainder of his life. Although the trial court's judgment recites certain admonishments, the judgment does not recite an admonishment that, as a consequence of his guilty plea, Appellant would be subject to a lifetime sex offender registration requirement. *See* CRIM. PROC. art. 26.13(a)(5).

The trial court held a hearing on Appellant's amended motion for new trial and admitted the affidavits of Appellant and Chavez. Upon the hearing's conclusion, the trial court denied the motion.

After this, and represented by new counsel, Appellant filed an Article 11.072 application for a writ of habeas corpus. *See* CRIM. PROC. art. 11.072. In his application, Appellant raised two grounds for relief: (1) Chavez provided ineffective assistance of counsel when he misinformed Appellant of several aspects of the plea agreement, which resulted in Appellant entering an involuntary plea of guilty, and (2) Appellant's appellate counsel who prepared his amended motion for new trial provided ineffective assistance of counsel when he failed to assert in that motion that the trial court unlawfully ordered Appellant to be placed on two years' deferred adjudication community supervision in violation of Article 42A.103(a) of the Code of Criminal Procedure. *See* CRIM. PROC. art. 42A.103(a). Appellant attached an appendix to his application, which included, among other documents, his amended motion for new trial and its accompanying affidavits.

In his application, Appellant described the incident for which he was charged with sexual assault. He also explained that he was born and raised in Nigeria and won a visa lottery in 2013 through which he became a United States citizen. He stated that he has a heavy Nigerian accent and frequently has difficulty understanding and being understood by others. He further stated that after he entered his plea of guilty, he discovered that he was required to attend a sex offender therapy group—he soon was transferred from the group at the recommendation of the licensed counselor who supervised the group because his Nigerian accent posed, according to a letter from the counselor that was included in Appellant's application, an "insurmountable barrier to essential communication impeding the group process."

In support of his claim that his plea was involuntary due to ineffective assistance by Chavez, Appellant argued that:

- In a telephonic conversation between Chavez, Appellant, and Appellant's friend, Iraida Roach, Roach directly asked Chavez whether Appellant

would be required to register as a sex offender if he pled guilty, and that Chavez told them Appellant would not be charged as a sex offender, and that he could even have the offense expunged after he served his term of community supervision.

- A text message sent to Appellant by Chavez communicated the State's plea offer of two years' deferred adjudication community supervision and a fine of $2,500 but did not mention the lifetime sex offender registration requirement.

- Neither Appellant's plea documents nor the trial court's written admonishments mentioned the lifetime sex offender registration requirement, and the trial court's oral admonishments are not available because Appellant waived his right to a record of his plea hearing.

- Appellant was ordered to be placed on two years' deferred adjudication community supervision, but Article 42A.103 provides a minimum term of five years' community supervision for a defendant who is charged with and pleads guilty to the offense of sexual assault.

- Had he been presented with an offer of five years' deferred adjudication community supervision, a fine, and an allotment of community service hours, and had he been advised that a plea of guilty alone would require that he register as a sex offender for the rest of his life, Appellant would have rejected the plea offer and insisted on proceeding to trial.

To address Appellant's application, the trial court held evidentiary hearings on August 5—to accommodate Roach—and October 7, 2022.

At the August 5 hearing, Roach testified that she has known Appellant for sixteen years and that they met at church. Prior to the entry of his plea, and at Appellant's request, Roach joined a phone call between Appellant and Chavez to assist Appellant with the "language barrier" and to help him "understand everything." Roach testified that she directly asked Chavez whether Appellant would be required to register as a sex offender and that Chavez told them he would not. She further testified that Chavez also told them that Appellant would be able to

have the offense expunged from his record. In her affidavit that was attached to Appellant's habeas application, Roach stated that Appellant has problems understanding and being understood by others because of his Nigerian accent.

At the conclusion of the August 5 hearing, the trial court requested that the State submit a brief on the issue of the duration of Appellant's deferred adjudication community supervision that had been ordered. The State did so and attached an affidavit by Chavez to their brief. In this affidavit, Chavez stated that:

- He has practiced criminal law since 1990 and has handled hundreds of criminal cases, including acting as lead counsel in sixty-three criminal jury trials and as lead counsel in fifteen cases involving allegations that would require the defendant, if convicted or placed on deferred adjudication community supervision, to register as a sex offender.

- He believed that, on at least two occasions prior to Appellant's plea, he advised Appellant that he would be required to register as a sex offender if he was convicted or placed on deferred adjudication community supervision for the charged offense in the underlying case.

- Although he did not remember the exact date or setting in which he advised Appellant of this information, he recalled discussing the circumstances with Appellant in the context of advising him (1) that the consequences of failing to maintain and update his sex offender registration could result in him being charged with a third-degree felony offense, and (2) of the implications that registering as a sex offender could have on Appellant's ability to return to work as a driver for Uber.

- It was his opinion that Appellant understood he would be required to register as a sex offender if he entered a plea of guilty.

- He advised Appellant that if he successfully completed his term of community supervision and he stayed out of trouble for an additional five years, he would be eligible to petition the trial court for a nondisclosure order.

- He did not recall ever discussing a possible expungement of the case with Appellant.

- Appellant indicated that he desired to proceed to trial, but the State reduced its plea offer from ten years' imprisonment to two years' deferred adjudication community supervision and Appellant decided to accept that offer.

After the State submitted its brief, the trial court signed an order in which it denied Appellant's habeas application to the extent that Appellant sought relief on the basis that the two-year period of deferred adjudication community supervision ordered by the trial court was illegal or void.[1] The other bases for relief remained pending for consideration at the second evidentiary hearing.

At the second evidentiary hearing on Appellant's habeas application, Appellant presented several witnesses, including Chavez, Andrea Seabrook (Appellant's probation officer), and Gbamila Omotye (his pastor); Appellant also testified.

Chavez testified that he advised Appellant of the lifetime sex offender registration requirement on at least two occasions prior to Appellant's entry of his guilty plea—the same occasions to which he referred in his affidavit for the State. He detailed those conversations on cross-examination, and explained that Appellant had asked whether, as a driver for Uber, he could switch from driving customers to their desired locations to only picking-up and delivering food and other goods. Chavez also explained that he believes the consequences of violating some of the conditions of sex offender registration—potentially being charged with a felony for "something as simple as not updating your phone number"—to be unfair, and his opinion of that aspect of the registration requirement is a reason he recalls discussing this requirement with Appellant. Chavez further testified that although he did not

---

[1]Because Appellant was never sentenced to a term of imprisonment for the charged offense, he is not, and cannot, assert on appeal that he received an illegal or void *sentence*.

7

discuss the issue of expungement with Appellant, he did advise Appellant that he could obtain an order of nondisclosure if he was not convicted of the charged offense, and that his advice on this point was incorrect.

Seabrook interviewed Appellant as part of the presentence investigation report. Seabrook testified that she and Appellant struggled to communicate because of his accent. After Appellant's plea, Seabrook met with him in-person to "intake" him into the community supervision program; however, she found it difficult to communicate with him in person, although she noted that they were both wearing facemasks as precautions against COVID-19 at the time. At the intake meeting, they completed Appellant's initial sex offender registration, and Seabrook noted that Appellant was "irate" and "very animated" because of the sex offender registration terms and requirements. Seabrook testified that Appellant expressed he did not know that, as a condition of the plea agreement, lifetime sex offender registration was required. She further testified that it was unusual, in her fifteen years' experience as a probation officer, for a defendant such as Appellant to be unaware that he was required to register as a sex offender based on these circumstances.

Omotye testified that in the phone call in which he participated between Chavez and Appellant, sex offender registration was not discussed. Chavez and Appellant discussed the State's two-year community supervision offer, and Omotye advised Appellant that he should accept the offer. Omotye testified that Appellant was shocked and alarmed by the sex offender registration requirement. Omotye further testified that Appellant speaks "pigeon English," which he described as "broken English" that has a limited vocabulary, and that Appellant had difficulty comprehending people when they spoke quickly. Omotye later helped Appellant to

8

obtain employment as a cashier at Wal-Mart, and he testified that Appellant was able to "make it through his daily life" with the language skills he had.

With the assistance of an interpreter, Appellant testified that his native language is a Yoruba Ijebu dialect and that he moved to the United States in 2013. He met with Chavez twice before his plea hearing and each time he asked a friend— once Roach, and once Omotye—to attend the meeting to assist with the language barrier. Appellant testified that Chavez sent him a text message that communicated a plea offer from the State; Appellant described the offer as: "two years, that's if I pass a process for three years, then they will—then I will have my freedom."

Appellant denied that Chavez ever told him that he would be subject to a lifetime sex offender registration requirement as a consequence of pleading guilty. He also denied that he was admonished by the trial court concerning the sex offender registration requirement or that this requirement was otherwise discussed at his plea hearing. Appellant further claimed that he did not understand "anything" about the plea documents he signed and that he thought "everything was just in [his] favor; that after two years, [he] would be free." Appellant testified that he would not have accepted the State's plea offer and entered a plea of guilty if he had been offered "five years' deferred adjudication plus sex offender registration for life." In fact, he stated that he would not have accepted any offer that would have required him to register as a sex offender, and he disclaimed any knowledge about a sex offender registration requirement until after his plea hearing.

After the October 7 hearing, Appellant filed an amended habeas application in which he added two additional grounds for relief: that (1) his right to due process was violated because an interpreter was not appointed and did not attend his plea hearing, and (2) Chavez rendered ineffective assistance of counsel when he failed to

9

request that an interpreter be appointed to attend and assist Appellant at the plea hearing.[2]

The trial court denied Appellant's amended application and signed findings of fact and conclusions of law. The trial court found, among other things, that Roach was not a credible witness and noted that Roach did not explain how she could have "known [Appellant] for fourteen (14) or sixteen (16) years" when he had only moved to the United States nine years prior to the evidentiary hearings. The trial court also noted that Roach appeared to be attempting to "help" Appellant rather than being truthful.

The trial court found that Chavez was a credible witness, as demonstrated by, among other things, his admission that he mistakenly advised Appellant regarding the nondisclosure of his offense and the minimum period of community supervision that he could receive. The trial court further found that, prior to Appellant's plea, Chavez twice informed Appellant that he would be subject to a lifetime registration requirement as a sex offender if he pled guilty to the charged offense. Chavez testified that Appellant was not happy about the registration requirement, and his unhappiness demonstrated to Chavez that Appellant understood the circumstances and consequences of the registration requirement.

The trial court found that Seabrook was a credible witness. The trial court noted that, in the presentence report prepared by Seabrook after she interviewed Appellant, Appellant identified English as his primary language. Also, at their in-person meeting after Appellant's plea, Seabrook described Appellant as "irate" when they discussed his sex offender registration requirement.

---

[2]We note that Appellant is not asserting the same complaints—that relate to the failure to have an interpreter appointed to assist him—on appeal.

The trial court found that Appellant was not a credible witness. The trial court found that although Appellant requested and received the assistance of an interpreter at the habeas hearing, he demonstrated that he understood English given that some of the questions presented at the hearing, and his responses to those questions, were in English. The trial court described Appellant's demeanor in those moments: "He looked at that time as though he was caught out and then looked down." The trial court found that Appellant testified that the sex offender registration requirement was not discussed at his plea hearing and, because there was no interpreter present at the plea hearing, this further demonstrated that he understood what was discussed at the hearing. The trial court further found that Appellant filed two affidavits in connection with his plea, which appear to have been executed without the assistance of translators, as the affidavits were not accompanied by independent affidavits from a translator. Moreover, the trial court found that Appellant never testified that he told Chavez that he did not understand what Chavez was discussing with or explaining to him, including the terms of the plea agreement.

The trial court found Omotye to be a credible witness. The trial court found that it was not surprised that the registration requirement was not discussed during their phone call with Chavez because the purpose of the call was to discuss community supervision and there was no evidence that either Appellant or Omotye mentioned the registration requirement during that call. The trial court further found that because Appellant could function as a cashier at Wal-Mart this indicated, at a minimum, his functional comprehension of the English language.

The trial court also referred to the body-camera footage from Appellant's arrest, which showed, the trial court found, that Appellant and the arresting officer were able to understand and effectively communicate with each other in English.

11

The trial court similarly found that the video footage from the police station showed that Appellant and the officer were also able to understand and communicate with each other in English while there.

## II. *Standard of Review*

We review a ruling on an application for writ of habeas corpus for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). We examine the habeas record in the light most favorable to the trial court's ruling. *Kniatt*, 206 S.W.3d at 664.

To prevail on a post-conviction writ of habeas corpus, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996).

"Article 11.072 is 'the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution' in cases involving an individual who is serving a term of community supervision." *Torres*, 483 S.W.3d at 42 (quoting *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008)). The trial court is the sole finder of fact in an Article 11.072 habeas proceeding. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). In this setting, we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon the trial court's credibility and demeanor assessments. *Id.*

(applying the standard from *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011) (same). In its fact-finding role, the trial court may accept or reject all, part, or none of any witness's testimony. *See Guerrero*, 400 S.W.3d at 583. We will uphold the trial court's ruling and judgment as long as it is correct on any theory of law that is applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001); *see Diamond v. State*, 613 S.W.3d 536, 544–45 (Tex. Crim. App. 2020); *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

### III. *Applicable Law*

The writ of habeas corpus is an extraordinary remedy to be used when one's liberty is restrained. CRIM. PROC. art. 11.01 (West 2015); *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). Article 11.072 establishes the procedures that apply for a writ of habeas corpus in a criminal case in which the applicant was originally placed on community supervision. CRIM. PROC. art. 11.072, § 1. An applicant seeking habeas relief under Article 11.072 has the burden to establish by a preponderance of the evidence that the facts entitle him to relief. *Richardson*, 70 S.W.3d at 870. Additionally, there is a presumption of the regularity of the trial court's judgment and the underlying proceedings absent a showing to the contrary. *Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986); *Brown v. State*, 917 S.W.2d 387, 390 (Tex. App.—Fort Worth 1996, pet. ref'd).

To demonstrate that he is entitled to habeas relief under Article 11.072 on the basis of ineffective assistance of counsel, an applicant must demonstrate that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability that the outcome

of his trial would have been different.  *Torres*, 483 S.W.3d at 43 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984)); *see Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023).   In the context of a collateral challenge to the entry of a plea of guilty, the focus of the prejudice inquiry is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process," and whether a defendant has shown that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Torres*, 483 S.W.3d at 43 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

An attorney is deficient if his performance falls below an objective standard of reasonableness under the prevailing professional norms, considering the facts of the case when viewed from counsel's perspective at the time of representation.  *Strickland*, 466 U.S. at 687–88.  In undertaking this analysis, we must take every effort to "eliminate the distorting effects of hindsight."  *Id.* at 689.  "It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel."  *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983).  Thus, counsel is charged with making an independent legal and factual investigation into the case.  *Strickland*, 466 U.S. at 691; *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992).  Under *Strickland*, we must consider whether counsel conducted reasonable investigations or made a reasonable decision not to investigate.  *Lane*, 670 S.W.3d at 671 (citing *Strickland*, 466 U.S. at 691).

An attorney's deficient performance prejudices a defendant if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687).  To satisfy this prong, the "defendant must show that

14

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). The failure to succeed on either *Strickland* prong is fatal to the claim of ineffectiveness. *Id.*

A guilty plea is not knowing or voluntary if it was made as a result of ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 688–89 (Tex. Crim. App. 2012) (citing *Hill*, 474 U.S. at 56); *see Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). Thus, a defendant's decision to plead guilty, when based upon the erroneous advice of counsel, is not done voluntarily and knowingly. *See Moussazadeh*, 361 S.W.3d at 689 (citing *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991)).

IV. *Analysis*

A. *Nondisclosure and Plea Offer Terms*

In his first issue, Appellant complains that "the trial court abused its discretion where it did not find that [Appellant's] [t]rial [c]ounsel's admitted mistakes amounted to errors impacting [Appellant's] decision to plead guilty." Simply put, Appellant challenges the trial court's denial of his ineffective-assistance-of-counsel claim. In this regard, Appellant relies primarily on two arguments in support of this issue, namely that Chavez (1) stated in his affidavit and testified at the habeas hearings that he erroneously told Appellant he could "non-disclose" the offense, and (2) testified that he failed to consider that the State's offer of two years' deferred adjudication community supervision for the charged offense was not permitted by the controlling statute.

Regarding Appellant's first argument, Chavez admitted that he advised Appellant that he could obtain an order of nondisclosure for the charged offense, and

that his advice on this point was incorrect.[3]  The trial court appears to have found that Chavez's error fell below an objective standard of reasonableness under the prevailing professional norms, while the State's brief addresses only the *Strickland* prejudice prong.[4]  *See Strickland*, 466 U.S. at 687–88.  However, the trial court concluded that "[t]here is no evidence that [the] admitted mistake caused [Appellant] any harm."  This is because, as the trial court found, Appellant never mentioned or testified at the habeas hearings regarding the remedies of expunction or nondisclosure.  In particular, Appellant never testified that any statement he claims that Chavez made concerning expunction or nondisclosure had any effect on Appellant's decision to accept or reject the State's plea offer.

To show that an attorney's deficient performance prejudiced him, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 694).  Appellant asserts that Chavez's mistaken advice regarding Appellant obtaining a nondisclosure order establishes two things: (1) that Chavez presented Appellant with a better plea offer than the law permits—one that contemplated a potential future nondisclosure order when Appellant was in fact not eligible for such an order, and (2) that Chavez's mistake on this point also supports Appellant's contention that Chavez did not advise

---

[3]A person may not be granted an order of nondisclosure of his criminal history record information if the person has been previously placed on deferred adjudication community supervision for an offense that requires the person to register as a sex offender pursuant to Chapter 62 of the Code of Criminal Procedure.  TEX. GOV'T CODE ANN. § 411.074(b)(1)(A) (West 2019).  Sexual assault is one such offense. *See* CRIM. PROC. art. 62.051(a); art. 62.101(a)(1) (West Supp. 2023).

[4]In assessing competence, the Court of Criminal Appeals has held counsel accountable for knowledge, or the ability to attain knowledge, of relevant legal matters that are neither novel nor unsettled. *See, e.g.*, *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999) (citing *Ex parte Welch*, 981 S.W.2d 183 (Tex. Crim. App. 1998)).  The non-eligibility of Appellant's offense was readily ascertainable. *See* CRIM. PROC. arts. 62.001(5)(A), (6)(A); 62.051(a); 62.101(a)(1).

him he would be required to register as a sex offender for life as a consequence of entering a plea of guilty to the charged offense.

With respect to whether the State presented to Chavez a better plea offer than the law permits, and whether this circumstance somehow affected Appellant's decision to plead guilty, Appellant testified at the writ hearing, and he never mentioned that this mistaken advice influenced or contributed to his decision to plead guilty. Nor did he mention any such connection in either of his affidavits that were attached to his amended motion for new trial and his writ application. Rather, Appellant's focus, as demonstrated by his testimony and the substance of his affidavits, was on Chavez's alleged failure to advise him that he would be required to register as a sex offender for the rest of his life. Accordingly, we conclude that the record does not support Appellant's assertion that Chavez's mistake induced him to accept the State's plea offer because it presented a better deal than the law permits.

Appellant asserts that Chavez's mistake concerning Appellant's eligibility to obtain a nondisclosure order supports an inference that, contrary to Chavez's testimony, Chavez mistakenly failed to inform Appellant about the sex offender registration requirement prior to the entry of his plea of guilty. However, this argument invites us to second-guess the trial court's credibility and demeanor determinations, to which we afford "almost total deference." *Guerrero*, 400 S.W.3d at 583. As the factfinder, the trial court was free to believe or disbelieve all, part, or none of any witnesses' testimony, including that of Chavez, Roach, and Appellant. Therefore, because the record supports the trial court's credibility and demeanor determinations regarding Chavez's testimony that he *did* inform Appellant of the sex offender registration requirement, we decline the invitation to re-examine or "second-guess" these determinations. Consequently, we agree with the trial court's

ultimate conclusion that no evidence supports Appellant's contention that, but for Chavez's mistaken advice regarding nondisclosure, Appellant would have rejected the State's plea offer and proceeded to trial.

In his second argument in support of his first issue, Appellant complains that Chavez admitted that he did not consider that the State's plea offer of two years' deferred adjudication community supervision was not permitted for the charged offense. Because the two-year period offered by the State was less than the minimum period of community supervision required by law for Appellant's charged offense, Appellant argues that Chavez's presentment of the State's two-year plea offer induced Appellant to accept the plea offer because it presented a better deal than the law permits. *See* CRIM. PROC. art. 42A. 103(a).

The trial court made several key findings, as noted below, on this point:

- Chavez testified that the State's initial plea offer was for Appellant to serve prison time, but the offer was reduced to seven years' deferred adjudication, which Appellant was willing to accept; subsequently Chavez negotiated the plea offer to five years' deferred adjudication, which Appellant was also willing to accept, and finally the State offered two years' deferred adjudication, which Appellant did accept.

- Chavez acknowledged that the law requires a minimum of five years' deferred adjudication if a defendant pleads guilty to sexual assault. Neither the prosecutor nor the trial court realized this mistake.

- The prosecutor who negotiated the plea deal was an experienced prosecutor of sex crimes.

- Appellant testified that he would not have accepted a five-year period accompanied with a sex offender registration requirement nor, in fact, would he have accepted any plea bargain that included a lifetime sex offender registration requirement.

- Appellant's complaint that his community supervision period is less than the minimum required by law is correct, but he suffered no harm as a result

18

of the error. In fact, he received a term of community supervision that was three years less than the minimum period required by law.[5]

- Appellant was willing to accept deferred adjudication community supervision plea offers for five years or even seven years.

Appellant contends that these findings are not supported by the record and should be disregarded despite the great deference we afford to the trial court's credibility and demeanor determinations. But, on the question of whether—based on his knowledge of Appellant—Chavez believed that Appellant would have accepted the State's plea offer if its terms had been for a five-year period of deferred adjudication community supervision and a lifetime sex offender registration requirement, Chavez testified "[I]t was my impression at the time that, yes, he was even going to accept the seven year offer, but that [he] was wanting or preferring to have it be a lower term." Ultimately, the question of whether Appellant would have accepted a longer period of community supervision, if offered, along with the registration requirement, is one of credibility for the trial court to determine. The record shows that Appellant testified that he would not have accepted such an offer, but it also contains contrary testimony from Chavez. Because the record offers some support for its credibility and demeanor determinations, we defer to the trial court's findings on this point.

We have reviewed the habeas record in the light most favorable to the trial court's rulings. Each of the trial court's findings and conclusions regarding

---

[5]We recognize that we must determine in the matter before us whether the ineffective-assistance-of-counsel arguments asserted by Appellant are sustainable. For the reasons discussed in this opinion, we conclude that they are not. Nevertheless, we note that other bases, independent of our *Strickland* analysis, would preclude Appellant's ineffective-assistance claims. For instance, because Appellant received the benefit of a more lenient punishment than the law permits for the charged offense, and based on the circumstances presented here, he is estopped from collaterally challenging the trial court's judgment that ordered the term of deferred adjudication community supervision of which he now complains. *See Deen v. State*, 509 S.W.3d 345, 348–51 (Tex. Crim. App. 2017); *Murray v. State*, 302 S.W.3d 874, 882 (Tex. Crim. App. 2009); *Rhodes v. State*, 240 S.W.3d 882, 892 (Tex. Crim. App. 2007).

Chavez's mistakes are supported by the record and in accordance with the applicable law and standards. Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's request for habeas relief. Accordingly, we overrule Appellant's first issue.

B. *Voluntariness of Plea*

In his second issue, Appellant argues that the trial court abused its discretion when it denied Appellant's request for habeas relief without analyzing Appellant's ineffective-assistance-of-counsel claim in the context of an "involuntary plea." Appellant complains that "[t]he trial court did not explicitly conclude that, had Applicant been offered the plea permitted by law, he would not have pled guilty." Citing to *Padilla v. Kentucky*, Appellant asserts that "[a] habeas petitioner must convince the [trial] court that a decision to reject the plea bargain would have been rational under the circumstances." 559 U.S. 356, 372 (2010). The State responds that Appellant is not entitled to habeas relief on this point because the trial court did properly analyze Appellant's ineffective-assistance-of-counsel claim in the context of (1) each *Strickland* prong, and (2) a collateral challenge to a guilty plea.

Appellant asserts that the trial court's findings of fact supporting its determination that Chavez did advise him of the lifetime sex offender registration requirement prior to the entry of Appellant's guilty plea are erroneous and unfounded in light of Appellant's interactions with Seabrook (whom the trial court found to be credible), his filing of a motion for new trial in which he asserted that he was unaware of the registration requirement, the filing of his habeas application, and finally his pursuit of this appeal.

20

Building on this assertion, Appellant lists the following conclusions made by the trial court which, he contends, do not comport with a proper *Strickland* analysis in this context:

- Chavez did inform [Appellant] that [Appellant] could have an order of nondisclosure entered regarding his sexual-assault conviction. There is no evidence that [this] admitted mistake caused [Appellant] any harm.

- [Appellant] knew that he would be required to register as a sex offender before he accepted the State's plea offer.

- Because Chavez had previously informed [Appellant] of the lifetime sex offender registration requirements, no harm can have arisen from Chavez sending an assistant to review the plea paperwork with [Appellant]. [Appellant] certainly has not established any harm arose from that meeting.

- [Appellant] is correct in that he was ordered to two years' deferred adjudication community supervision in violation of Texas law, but he suffered no harm as a result of the error. In fact, he received three fewer years of supervision than the law requires.

According to Appellant, only the following conclusion by the trial court comports with a proper *Strickland* analysis:

- [Appellant] was willing to accept an offer of seven years' deferred adjudication. He was [also] willing to accept an offer of five years' deferred adjudication. His lawyer was able to obtain a lesser period. No harm ensued.

But, Appellant asserts, this conclusion is not supported by the record because Chavez testified that although Appellant considered the State's seven-year plea offer, he was not pleased with the duration of the community supervision term; it was too long, and he wanted a shorter term of supervision. He further asserts that "[h]e rejected the seven- and five-year plea offers first extended by the State; otherwise, there would have never been a two-year offer." We have already addressed this same

21

argument above. As we have said, the trial court's findings and conclusions on this point hinged on its credibility and demeanor determinations, which are supported by the record and which we will not disturb.

Appellant argues that he would not have pled guilty had he been presented with an offer of a five-year deferred adjudication community supervision period that included a lifetime sex offender registration requirement, and that it would not have been reasonable for him to do so because sex offender registration has such a significant impact on an individual's life. However, as we have already discussed, the trial court's findings do not support Appellant's contention.

Irrespective of Appellant's assertion—that Chavez did not inform him that, by pleading guilty to the charged offense, he would be required to register as a sex offender for life—we note that Appellant does not complain on appeal that the trial court, before it accepted Appellant's plea, failed to admonish him on this point. Indeed, prior to accepting a plea of guilty when the defendant is charged with a sexual offense, trial courts must admonish the defendant that a plea of guilty alone—even if a finding of guilt is deferred—requires that the defendant comply with the Chapter 62 sex offender registration requirements. *See* CRIM. PROC. arts. 26.13(a)(5), 62.001, *et seq*. The sex offender registration requirements also apply in this context when the defendant's plea of guilty results in the defendant being placed on deferred adjudication community supervision. *See* CRIM. PROC. arts. 62.001(5), 62.051(a). However, absent a showing of harm—which is not present in this case—the failure to admonish a defendant on this point does not invalidate the defendant's plea of guilty or render the plea involuntary. *See Anderson v. State*, 182 S.W.3d 914, 918 (Tex. Crim. App. 2006); *Mitschke v. State*, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004). Moreover, a trial court's failure to

comply with the Article 26.13(a)(5) sex offender registration requirement admonishment does not provide a basis for the defendant to set aside his plea of guilty. *See* CRIM. PROC. art. 26.13(h); *see also Abrego v. State*, 611 S.W.3d 139, 143 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (collecting cases).[6]

In its conclusions of law, the trial court cited the following law and standard for an ineffective-assistance-of-counsel claim in the context of an involuntary plea:

> 88. "When a defendant enters his plea [of guilty] upon the advice of counsel and subsequently challenges the voluntariness of that plea based on [a claim of] ineffective assistance of counsel, the voluntariness of such plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." [*Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)]. "The record must affirmatively demonstrate that the claim has merit." [*Ex parte Salim*, 595 S.W.3d 844, 856 (Tex. App.— Fort Worth 2020, no pet.)].

This is the correct and applicable standard. *See Lane*, 670 S.W.3d at 671 (citing *Strickland*, 466 U.S. at 687, 690); *Torres*, 483 S.W.3d at 43, 47. Here, the trial court's findings of fact and conclusions of law amply demonstrate that it conducted the appropriate analysis under the appropriate standard for Appellant's habeas application and the issues raised therein.

We have reviewed the record in accordance with the applicable standard of review and conclude that the trial court did not abuse its discretion when it denied

---

[6]In this case, the trial court found that it is the court's practice to admonish defendants whose pleas of guilty will subject them to the lifetime sex offender registration requirements. However, and because the record of Appellant's plea hearing was waived, the trial court could not specifically recall whether it did admonish Appellant about this requirement during Appellant's plea hearing. Despite this, for purposes of our review, and to be sure, we prefer that a record be made whenever a defendant is entering a plea of guilty to a felony offense.

Appellant's request for habeas relief.  Accordingly, we overrule Appellant's second issue.

## V.  *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


May 9, 2024

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.